OPINION
{¶ 1} In this accelerated calendar case, appellant, Patricia A. Johnson, appeals from the decision of the Lake County Court of Common Pleas, granting appellee, Allstate Insurance Company ("Allstate"), summary judgment on appellant's claims for breach of insurance contract, bad faith, and damages.
 {¶ 2} The following facts gave rise to the instant appeal. In July 1997, appellant resided at 2220 East Arms Drive, Liberty Township, Ohio, with her husband Wilbert Johnson, Jr., ("Mr. Johnson") and her son, Jonathan Price, Jr. ("Jonathan"). On July 6, 1997, an explosion occurred in the laundry room of the residence. Appellant claimed that she inadvertently poured gasoline into the washing machine, thereby causing an explosion.
 {¶ 3} According to appellant, she thought the bottle contained Clorox, and she did not know how the gasoline got into the bottle. In response to the situation, appellant's twenty year old son, Jonathan, called 911 for assistance. Mr. Johnson, however, was not home at the time of the explosion. Appellant was subsequently treated at Trumbull Memorial Hospital. Due to the extent of her injuries, appellant did not return to work for approximately one month.
 {¶ 4} During her deposition testimony, appellant claimed that the washer, dryer, computer, and furnace were damaged in the explosion, along with some clothing. At the time of the explosion, the residence was insured by a homeowner's insurance policy issued by Allstate with appellant as the named insured. Thus, on August 25, 1997, appellant submitted a sworn statement in proof of loss to Allstate. Appellant listed the following loss and damage resulting from the explosion: $200 estimate prepared by appellant to dry clean clothes damaged in the explosion; $1,533.32 estimate prepared by Sears Brand Central for a new washer and dryer with a three-year maintenance agreement, delivery and installation charge; $12,465 estimate prepared by Lewis Construction for the restoration of damage to the residence; $2,147.25 estimate prepared by Unified Computer Services for a new computer with a monitor and a color printer; and $2,201 estimate prepared by Thompson Mechanical, Inc., for the installation of a new furnace and coil.[1] Thus, appellant claimed that the actual cash value, loss, and damage resulting from the explosion totaled $18,547.
 {¶ 5} Gerald Plaskett ("Mr. Plaskett"), an Allstate claim service adjuster, was assigned to investigate appellant's claim for loss. Because appellant was recuperating from the injuries sustained in the explosion, Mr. Plaskett dealt with her husband.
 {¶ 6} According to Mr. Plaskett's affidavit, he met with Mr. Johnson to advise him that "repair estimates would have to be obtained for the damaged washer, dryer and furnace prior to their disposition." A representative from Sears was tentatively scheduled to inspect the washer and dryer on August 5, 1997. However, according to Mr. Plaskett's affidavit, a Sears' representative informed him that "the inspection had been cancelled because the homeowner had not returned calls to confirm the appointment." As a result, Mr. Plaskett requested that a Sears' representative schedule another appointment.
 {¶ 7} Ultimately, the washer and dryer were never inspected because the appliances were removed from appellant's residence. In fact, during her deposition testimony, appellant confirmed that her husband removed the allegedly damaged washing machine from the residence, and she was unaware of what he had done with the appliance.
 {¶ 8} "After learning that [appellant] claimed that her computer was damaged as a result of the explosion, [Mr. Plaskett] contacted Ron Ray, a computer technician, to evaluate the damage to [appellant's] computer." According to Mr. Plaskett's affidavit, on September 8, 1997, he left a message for Mr. Johnson advising him of the upcoming computer inspection. However, Mr. Plaskett explained that he received a letter from Ron Ray advising him that "Mr. Johnson would not permit him to inspect the computer and instead referred him to their attorney." As to this point, appellant testified that she was unable to locate the allegedly damaged computer.
 {¶ 9} As a result of these events, Mr. Plaskett averred that appellant and Mr. Johnson's lack of cooperation materially prejudiced Allstate's ability to process the claim for loss:
 {¶ 10} "14. Despite [Mr. Plaskett's] repeated requests to examine the allegedly damaged washer, dryer and computer, [appellant and Mr. Johnson] disposed of these appliances without giving Allstate the opportunity to have those items examined.
 {¶ 11} "15. [Appellant and Mr. Johnson's] refusal to give Allstate the opportunity to examine the washer, dryer and computer materially prejudiced Allstate's ability to process the claim, determine the nature and extent of the damage and to assign any salvage value to the property.
 {¶ 12} "16. [Appellant and Mr. Johnson's] refusal to give Allstate the opportunity to examine the washer, dryer and computer made it impossible for Allstate to determine if the property was actually damaged as a result of the explosion, and compromised Allstate's ability to evaluate and defend the claim."
 {¶ 13} George Voytilla, Jr., ("Mr. Voytilla") of Thatcher Heating Cooling also submitted an affidavit on behalf of Allstate. According to Mr. Voytilla, when he inspected the gas-fired furnace on August 15, 1997, he concluded that "there was no damage done to the furnace due to an explosion in the utility room where the furnace was located." According to Mr. Voytilla, "[t]he furnace was approximately 20 years old with rust scaling and a build-up of soot on the heat exchanger. There were also small cracks at the back of the heat exchange. *** The poor condition of the furnace was due to its age and the fact that it was confined to a laundry room."
 {¶ 14} Finally, Jerome F. Prugar ("Mr. Prugar"), president of Prugar Consulting, Inc., supplied an affidavit on behalf of Allstate. According to Mr. Prugar, Allstate requested that Prugar Consulting, Inc., conduct an evaluation of the residential distress at appellant's home. As a result, on July 15, 1997, Daryl Young, P.E., ("Mr. Young"), a former structural engineer for Prugar Consulting, Inc., conducted an inspection and investigation of appellant's home. According to Mr. Prugar and Mr. Young's letter dated July 31, 1997, they concluded that the residence did exhibit some damage characteristic of an explosion. However, the remainder of the damage to the residence highlighted by Mr. Johnson resulted from such occurrences as aging, wear and tear, unbalanced earth pressure, seasonal shrinkage, swelling of construction materials, and water leakage.
 {¶ 15} Ultimately, Allstate denied appellant's claim for loss. As a result, on October 2, 2000, appellant filed a complaint against Allstate in the Trumbull County Court of Common Pleas. Therein, appellant claimed that the explosion "caus[ed] damage to the structure, fixture and contents in the sum of $18,547.00[.]" According to the complaint, "[Allstate] ha[d] refused to pay [appellant] for her losses, although [appellant] ha[d] performed all conditions precedent to payment[.]" Thus, appellant alleged that the denial of her claim for loss violated the terms of the homeowner's insurance policy, constituted a breach of the insurance contract, and had been made in bad faith. As a result of Allstate's allegedly wrongful conduct, appellant claimed that she suffered emotional distress and sought monetary damages.
 {¶ 16} On May 3, 2001, Allstate filed a motion for summary judgment, arguing that appellant's failure to cooperate with the insurance company in processing and investigating the claim relieved Allstate of its obligation to pay the claim.[2] While appellant permitted the inspection of the furnace and the residence, an inspection of the washer, dryer, and computer alleged to have been damaged in the explosion never occurred because appellant had improperly disposed of these appliances. As a result of appellant's conduct, Allstate claimed that it was materially prejudiced in that it was impossible for the insurance company to evaluate whether these appliances were actually damaged in the explosion or whether the property had any salvage value.
 {¶ 17} Allstate further claimed that appellant failed to produce requested documents and refused to make her son available for an examination under oath, thereby materially prejudicing Allstate's ability to evaluate the claim for loss. Finally, according to Allstate, appellant could not establish that she was entitled to damages based on her claims for breach of contract and bad faith.
 {¶ 18} In support of its summary judgment motion, Allstate filed appellant's deposition, submitted the affidavits of Mr. Plaskett, Mr. Voytilla, and Mr. Prugar, and attached a copy of the homeowner's insurance policy, along with numerous items of correspondence requesting appellant to produce documents and make her son available for an examination under oath.[3]
 {¶ 19} In turn, on June 5, 2001, appellant filed a response to Allstate's motion for summary judgment, wherein she "conceded that [she] did not do everything requested of her by [Allstate.]" Despite that admission, appellant argued that Allstate was not materially prejudiced by any lack of cooperation. Furthermore, appellant claimed that the issue of whether she breached her duty to cooperate under the homeowner's insurance policy is a matter for the trier of fact. According to appellant, she had "fully and frankly disclosed the nature and cause of the explosion. What possible additional information could be gathered from examining a washer and dryer that were obviously destroyed by the explosion?" Appellant also claimed that no relevant information could have been gleaned from an examination of her son under oath. Rather, appellant submitted that "the totality of the circumstances establish that [Allstate] never intended to pay this claim from day one."
 {¶ 20} As an aside, we note that appellant did not attach any evidentiary material in support of her position. Instead, appellant seemingly relied on the exhibits supplied by Allstate to support her argumentation.[4]
 {¶ 21} After taking the matter under advisement, on October 24, 2001, the trial court granted Allstate's motion for summary judgment, reasoning that appellant had failed to rebut the fact that she was uncooperative with the insurance company during the investigation of her claim for loss:
 {¶ 22} "There has been no fact presented by [appellant] in her answer brief by way of affidavit, deposition, etc. to rebut the facts asserted in the memorandum attached to [Allstate's] motion. On the basis of Gabor v. State Farm Mut. Auto. Ins. Co. (1990), 66 Ohio App.3d 141,143[,] absent presentation of fact to rebut the fact of non-cooperation and non-compliance with the terms of the insurance policy this Court as a matter of law grants [Allstate's] Motion for Summary Judgment." (Emphasis sic.)
 {¶ 23} It is from this judgment appellant appeals, advancing a single assignment of error and reiterating the arguments set forth in her response to Allstate's motion for summary judgment.
 {¶ 24} Before addressing the merits of appellant's lone assignment of error, we will lay out the appropriate standard of review.
 {¶ 25} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389; Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266,268, 1993-Ohio-12; Bostic v. Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 26} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v.Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340
 {¶ 27} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim.Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party.Id.
 {¶ 28} In the instant matter, appellant contends that the trial court erred in granting summary judgment in Allstate's favor because the insurance company had failed to establish that it was materially prejudiced by any lack of cooperation. For instance, appellant relies on Mr. Voytilla's affidavit to conclude that despite any perceived transgression by appellant, Mr. Voytilla was still provided a fair and full inspection of the furnace. Further, appellant refers to the affidavit of Mr. Pruger, who also indicated that he was given a fair and full opportunity to investigate the residence and opined that some of the claimed structural damage to the residence was caused by the explosion. From this, appellant concludes that appellant incurred a coverable loss under the homeowner's insurance policy, and any perceived or real transgression of the cooperation clause was not material, not substantial, and not prejudicial.
 {¶ 29} "The purpose for paying premiums of insurance coverage is to buy peace of mind so that when accidents occur, the insured can trust that his insurance company will not renege on its agreement." Ward v.Custom Glass Frame, Inc. (1995), 105 Ohio App.3d 131, 137. Likewise, "[i]n order to protect themselves from false claims, insurers frequently include clauses in their policies which mandate cooperation by the insured in investigating a claim." Gabor v. State Farm Mut. AutoIns. Co. (1990), 66 Ohio App.3d 141, 143. See, also, Templin v. GrangeMut. Cas. Co. (1992), 81 Ohio App.3d 572, 576.
 {¶ 30} Here, Allstate's insurance policy contains such a clause requiring appellant's cooperation in the investigation of a claim for loss. When cooperation is a policy condition and the insured fails to comply, "the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate. *** To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company. *** Therefore, before lack of cooperation may warrant cancellation of a policy or relieve an insurer of an obligation on a claim, the insured's failure must prejudice material rights of the insurer." (Citations omitted) Gabor at 143-144. See, also, Templin at 576; State Farm Mut.Auto. Ins. Co. v. Holcomb (1983), 9 Ohio App.3d 79, 81.
 {¶ 31} Although the concept of prejudice is not susceptible to a bright-line analysis, prejudice has been described as seriously impairing the insurer's ability to investigate a claim. Weller v. Farris (1998),125 Ohio App.3d 270, 276; Erie Ins. Co. v. Maxwell (Sept. 29, 1999), 9th Dist. No. 98CA001, 1999 WL 771726, at 5.
 {¶ 32} Moreover, the issue of "[w]hether an insured has violated the cooperation clause of his policy is a question to be determined in view of the facts and circumstances in each case. *** Generally, the issue of whether there has been a violation in an insurance policy is for the factfinder. *** A court may decide the cooperation clause issue as a matter of law, however, when a case presents undisputed facts." Gabor at 144. See, also, Luntz v. Stern (1939), 135 Ohio St. 225, 237; Ward at 135.
 {¶ 33} With the foregoing legal principles in mind, we consider the instant matter. Here, it is undisputed that appellant had a duty to cooperate in the investigation of her claim under the terms of the homeowner's insurance policy. According to correspondences dated September 3, 1997 and May 8, 1998, Allstate requested appellant to produce certain documentation such as income tax returns, medical records, and bills relating to the injuries sustained in the explosion, copies of mortgage, loan, bank, and credit card statements, along with any other financial obligations that were in effect in 1997.
 {¶ 34} It is reasonable to conclude that the financial information requested by Allstate was material to its investigation of appellant's claim to determine whether appellant had a motive to misrepresent the nature or extent of damage resulting from the explosion. This is especially relevant in light of the fact that appellant failed to provide Allstate with the opportunity to inspect the washer, dryer, and computer allegedly damaged in the explosion. In fact, during her deposition testimony, appellant admitted that her husband disposed of the allegedly damaged washer, and she was unable to locate the allegedly damaged computer. It is hard to imagine that this occurred through ignorance. Mr. Johnson's actions occurred, despite the fact that he was in direct contact with Allstate during the first part of the investigation. Thus, appellant's financial status was relevant to the determination of whether she had a motive to misrepresent the nature or the amount of damage sustained in the explosion.
 {¶ 35} While appellant did not produce the majority of the documents requested by Allstate, she provided some testimony about her financial status during her deposition. For instance, appellant testified as to her outstanding financial obligations, such as mortgage, credit card, utility, car, tax, and student loan payments. Appellant also indicated that she had a checking and savings account at Bank One. While her husband had previously filed for bankruptcy prior to the marriage, appellant had never done so. Appellant further explained that she was current on her financial payments at the time of the loss, and that she and her husband's financial status were good. Viewing the facts in a light most favorable to appellant as required by Civ.R. 56, we believe that appellant partially complied with Allstate's requests by providing some information concerning her financial status, and also permitting the inspection of the furnace and the residence, as evidenced by Mr. Voytilla and Mr. Prugar's affidavit. The problem was that, without documentation, appellant's claim of no financial distress was not verifiable.
 {¶ 36} Furthermore, appellant failed to provide Allstate with an opportunity to inspect the washer, dryer, and computer allegedly damaged in the explosion. These appliances were disposed of prior to an inspection, despite requests and attempts to inspect these items by Allstate. The inability to inspect these appliances, in particular the washer, seriously impeded Allstate's ability to investigate whether the explosion and damage sustained actually occurred as appellant claimed it did.
 {¶ 37} In other words, without the ability to inspect the allegedly damaged washer, dryer, and computer, Allstate was unable to verify the exact nature of the explosion and whether these appliances were, indeed, damaged in the explosion or whether they had retained a salvage value. This conclusion is supported by Mr. Plaskett's affidavit, which averred that appellant and Mr. Johnson's lack of cooperation materially prejudiced Allstate's ability to process and evaluate the claim for loss:
 {¶ 38} "14. Despite [his] repeated requests to examine the allegedly damaged washer, dryer and computer, [appellant and Mr. Johnson] disposed of these appliances without giving Allstate the opportunity to have those items examined.
 {¶ 39} "15. [Appellant and Mr. Johnson's] refusal to give Allstate the opportunity to examine the washer, dryer and computer materially prejudiced Allstate's ability to process the claim, determine the natureand extent of the damage and to assign any salvage value to the property.
 {¶ 40} "16. [Appellant and Mr. Johnson's] refusal to give Allstate the opportunity to examine the washer, dryer and computer made it impossible for Allstate to determine if the property was actually damaged as a result of the explosion, and compromised Allstate's ability to evaluate and defend the claim." (Emphasis added.)
 {¶ 41} Hence, the issue was more than just the extent of damage sustained in the explosion. The issue also went to whether there was any liability on the part of Allstate.
 {¶ 42} In her response to Allstate's motion for summary judgment, appellant argued that Allstate was not materially prejudiced by any lack of cooperation. Appellant, however, attached no evidentiary materials in support of her position; rather, she relied upon those exhibits submitted by Allstate. We find nothing in those exhibits which amounts to a rebuttal of Allstate's claim that appellant's lack of cooperation materially prejudiced Allstate's ability to investigate appellant's claim of loss.
 {¶ 43} In summation, a review of the undisputed facts show that appellant partially complied with Allstate's requests by providing some information concerning her financial status and permitting the inspection of the residence and the furnace. However, appellant refused to provide Allstate with the opportunity to inspect the washer, dryer, and computer allegedly damaged in the explosion and failed to cooperate by producing her son Jonathan for a timely examination under oath.[5] Collectively, such non-cooperation materially and substantially prejudiced Allstate's ability to properly evaluate and process appellant's claim for loss. While the residence exhibited some damage characteristic of an explosion, the cause and liability for such damage was not ascertained or verified because the washer and dryer involved in the explosion were disposed of prior to the inspection by Allstate. Thus, no claim for these damages can be validated. Accordingly, Allstate was entitled to deny appellant's claim for loss.
 {¶ 44} Furthermore, since appellant failed to substantiate with evidence her argument that Allstate did not suffer material prejudice due to her lack of cooperation, no issue of material fact existed. Likewise, appellant failed to support her claims for breach of contract, bad faith, and damages. For these reasons, the trial court properly granted summary judgment in favor of Allstate.
 {¶ 45} Based on the foregoing analysis, appellant's single assignment of error is without merit, and the judgment of the trial court is affirmed.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.
[1] According to appellant's deposition testimony, Mr. Johnson obtained the estimates.
[2] Prior to filing its motion for summary judgment, on March 19, 2001, Allstate filed a motion to have its request for admissions served upon appellant deemed admitted. The record, however, shows that the trial court never issued a written ruling on Allstate's motion. "`Generally, when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion.'" Karlen v. Carfangia (June 2, 2001), 11th Dist. No. 2000-T-0081, 2001 WL 589381, at 3, quoting Dozerv. Dozer (1993), 88 Ohio App.3d 296, 303. See, also, Rozzi v. CafaroCo., 11th Dist. No. 2001-T-0090, 2002-Ohio-4817, at ¶ 14. Thus, for purposes of appeal, we assume that the trial court, in failing to issue a written response to appellant's motion to deem the request for admissions as admitted, impliedly denied the motion.
[3] A review of appellant's deposition reveals that the parties stipulated that "the witness' signature to the finished transcript of her statement may be and is hereby waived by agreement of the parties; and that the statement may be thereupon used on behalf of the parties in the aforesaid cause of action as fully and to the same extent as if written in the presence of the witness and subscribed by the witness in the presence of the Notary Public." However, at the close of the deposition, appellant did not waive her signature to the finished transcript.
[4] On June 13, 2001, Allstate filed a reply memorandum in support of summary judgment, contending that appellant has produced no evidence to rebut the insurance company's argument that it had been materially and substantially prejudiced by appellant's failure to cooperate.
[5] As an aside, we note that Mr. Johnson eventually agreed to be deposed by Allstate. Jonathan's testimony was relevant to the foregoing investigation because he was a member of the household and was allegedly present at the time of the explosion.